UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LOCK REALTY CORPORATION IX, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO. 3:05-CV-715 RM |
| ) | |
| U.S. HEALTH, LP, et al., ) | |
| ) | |
| Defendants ) | |

OPINION AND ORDER

Lock Realty sues U.S. Health, Rebecca and John Bartle, and Larry New, alleging the defendants breached a lease agreement the parties entered into in January 2002. The subject of the lease agreement is a nursing home known as the Americare Living Center of Goshen. During the course of litigation, the parties entered into a release and settlement agreement, in which U.S. Health agreed to the entry of judgment should the defendants breach the terms of the settlement agreement. Judgment was entered against U.S. Health on June 21, 2006 in the amount of $485,430.56, with a supplement judgment for attorneys' fees in the amount of $29,238.85 entered on July 14, 2006. Lock Realty moves to amend the court's judgments to add AmeriCare Living Centers III, LLC as a judgment debtor. A hearing on the motion to amend was held on September 11, and for the reasons that follow, the court now grants Lock Realty's motion.

While trying to enforce its judgments against U.S. Health, Lock Realty received a check from "AmeriCare Living Centers." When that check bounced,

Lock Realty discovered that U.S. Health had assigned its interest in the lease agreement to AmeriCare III on July 1, 2003; Mr. New signed the agreement on behalf of both the assignor and assignee. Lock Realty maintains that U.S. Health's assignment violates the lease agreement which provides, "[t]he Tenant shall not transfer, assign, mortgage this Lease, or the Tenant's interest in and to the Leased Premises, without first procuring the written consent of the Landlord."

Lock Realty moves to amend the court's judgments under FED. R. CIV. P. 60(b), claiming the assignment from U.S. Health to AmeriCare III constitutes newly discovered evidence which by due diligence could not have been discovered, as well as fraud and misrepresentation by an adverse party. The court agrees there is sufficient evidence of misrepresentation given that AmeriCare III's failure to disclose the assignment throughout this litigation has prevented Lock Realty from fully and fairly presenting its meritorious claim. Lonsdorf v. Seefeldt, 47 F.3d 893, 897 (7th Cir. 1995). AmeriCare III says an amendment to the judgments would violate its due process rights and is contrary to Nelson v. Adams USA, 529 U.S. 460 (2000) since AmeriCare III hasn't had an opportunity to defendant itself against the imposition of liability. The court doesn't agree.

In Nelson v. Adams, the Supreme Court held that due process requires a prospective party, even one on notice of the lawsuit, be afforded the opportunity to respond to claims against it. Nelson v. Adams, 529 U.S. at 465-467 ("due process does not countenance such swift passage from pleading to judgment in the pleader's favor"). Our case is different from Nelson v. Adams because Nelson

2

included no finding that the party added to the judgment was an alter-ego of the party already named in the judgment. *See, e.g.,* William H. Morris Co. v. Group W, Inc., 234 F.3d 1279 (9th Cir. 2000) (unpublished table decision) (citing Nelson v. Adams, 529 U.S. at 470-471 ("Adams, for its part, has disavowed reliance on a veil-piercing theory . . .. The legitimacy of [the judgment debtor] as a corporation, in short, is not at issue in this case."). Lock Realty says the named defendants and AmeriCare III are the "same," and service upon AmeriCare III would mechanically be the equivalent as service on the defendants. As counsel for Lock Realty explained in open court: "[w]e would mail all the same things to all the same places that we did the first case. All the same people would be involved." It appears Lock Realty asks that the court disregard AmeriCare III's corporate structure for purposes of finding it to be party to this litigation, and so bound by the court's judgment.

The court's jurisdiction over this case is based on diversity of citizenship, so Indiana law governs the corporate structure's penetrability. "Where one corporation so controls another corporation that, as a practical matter, the two entities function as one, service on one corporation is effective as to both." Bally Export Corp. v. Balicar, Ltd., 804 F.2d 398, 405 (7th Cir. 1986); *see also* Oliver v. Pinnacle Homes, Inc., 769 N.E.2d 1188, 1191 (Ind. App. 2002) ("The legal fiction of a corporation may be disregarded 'where one corporation is so organized and controlled and its affairs so conducted that it is a mere instrumentality or adjunct of another corporation.'") (quoting Smith v. McLeod Distributing, Inc., 744 N.E.2d

3

459, 462 (Ind. Ct. App. 2000)). The corporate form should be disregarded in limited circumstances, but may ignored to prevent fraud or unfairness to third parties. Winkler v. V.G. Reed & Sons, Inc., 638 N.E.2d 1228, 1232 (Ind.1994). "When a court exercises its equitable power to pierce a corporate veil, it engages in a highly fact-sensitive inquiry," Id , and "while no one talismanic fact will justify with impunity piercing the corporate veil, a careful review of the entire relationship between various corporate entities, their directors and officers may reveal that such an equitable action is warranted." Stacey-Rand, Inc. v. J.J. Holman, Inc., 527 N.E.2d 726, 728 (Ind. Ct. App. 1988).

Several factors guide the court in determining whether U.S. Health and AmeriCare can be considered a single business enterprise, including whether (1) similar corporate names were used; (2) the corporations shared common principal corporate officers, directors, and employees; (3) the business purposes of the corporations were similar; and (4) the corporations were located in the same offices and used the same telephone numbers and business cards. Oliver v. Pinnacle Homes, Inc., 769 N.E.2d at 1192.  The court also may disregard the separateness of affiliated corporations when the corporations are not operated as separate entities but are manipulated or controlled as one enterprise through their interrelationship to cause illegality, fraud, or injustice or to permit one economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise. Id.

4

U.S. Health and AmeriCare III meet virtually all these indicia. First, U.S. Health and AmeriCare III share the same business address and have the same registered office. In fact, a party seeking to serve U.S. Health and AmeriCare III could do so via the same entity—Heritage Medical Group, Inc.— which is a general partner of U.S. Health and the registered agent of AmeriCare III. IND. TRIAL RULE 4.6. Second, U.S. Health and AmeriCare III share common corporate officers, directors, and employees: (1) Mr. New is an officer of both AmeriCare III and Heritage Medical Group, a limited partner of U.S. Health, and the registered agent for U.S. Health and Heritage Medical Group; (2) attorney Jeffery Robbins has represented U.S. Health, Mr. New, and the Bartles throughout this litigation, while also serving as corporate counsel for AmeriCare III; and (3) the Bartles are limited partners of U.S. Health and serve as officers for AmeriCare III. Third, U.S. Health and AmeriCare III have been or are engaged in virtually identical lines of business; both have been the operator and tenant of the AmeriCare Living Center of Goshen.[1]

Even more indicative of their common identity is the way the use by Mr. New and the Bartles of these entities as one enterprise would permit AmeriCare III to escape liability arising out of an operation U.S. Health conducted for the benefit of the whole enterprise. Not only did Mr. New covertly assign U.S. Health's interest in violation of the lease agreement, he and the Bartles concealed the

---

[1] See The Indiana Secretary of State registry, EXHIBIT F PLAINTIFF'S MOTION TO AMEND, and Indiana State Department of Health's facility profile for the AmeriCare Living Center, www.state.in.us/isdh/regsvcs/ltc/profile/cr000091.htm

5

assignment from Lock Realty and the court throughout this litigation. Moreover, it appears from the record that the majority of funding for the operation of the nursing home is paid from Medicaid, Medicare, and the Indiana Department of Health to AmeriCare III. When combined with Mr. Bartle's email explaining to Lock Realty's president that seizing the defendants' assets is a collection "strategy that will not work," this strongly suggests that Mr. New and the Bartles are using U.S. Health, along with 83 other active entities, as a means of sheltering the overall enterprise from liability.

There is adequate evidence to conclude U.S. Health and AmeriCare III are both instrumentalities of an single enterprise controlled by the defendants. As such, service of U.S. Health, Mr. New, and the Bartles is sufficient for service of AmeriCare III and the court may exercise jurisdiction over AmeriCare III. *See* Swaim v. Moltan Co., 73 F.3d 711, 719 (7th Cir. 1996) ("Valid service of process is a prerequisite to a district court's assertion of personal jurisdiction ... more than actual notice; it requires a legal basis for holding the defendant susceptible to service of the summons and complaint."). The due process concern expressed in Nelson v. Adams — an adequate opportunity to defend against the imposition of liability — isn't implicated since AmeriCare III was more than a prospective party on notice; it was a party to the litigation per its common identity with the named defendants.

6

For the foregoing reasons, Lock Realty's motion to amend judgment [Doc. No 51] is GRANTED and its motion to modify the time limits for filing [Doc. No. 52] is DENIED AS MOOT. The clerk shall enter judgment accordingly.

SO ORDERED.

Entered:   September 25, 2006

      /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court

cc:   counsel of record