THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LOCK REALTY CORPORATION IX, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO. 3:05-CV-715 RM |
| ) | AND |
| ) | CAUSE NO. 3:06-CV-487 RM |
| U.S. HEALTH, LP, et al., ) | |
| ) | |
| Defendants ) | |

OPINION AND ORDER

An amended judgment was entered in this contract dispute against U.S. Health, John and Rebecca Bartle, Larry New, and Americare Living Centers III, LLC on September 25, 2006. On November 17, the court adopted Magistrate Judge Nuechterlein's recommendation that the defendants be enjoined from encumbering any asset that could be used to satisfy Lock Realty's judgment.[1] On December 5, intervenor Health Care Services moved for an order directing AdminiStar Federal, the entity responsible for processing Americare's Medicare claims, to pay it funds which represent its secured interest in Americare's account receivables, and in the alternative, an order freezing Medicare payments owed to Americare.[2] A hearing was held the following day, and the parties agreed to the freezing of funds withheld by AdminiStar. The court entered an order freezing the

---

[1]Lock Realty's motion to enjoin was filed in 3:06-CV-487 (*Lock II*) — a related but separate cause of action founded on rent that came due after the entry of judgment in *Lock I*.

[2]Health Care Services's motion to intervene was granted on December 11; Nation City's motion to intervene was granted on January 4.

accounts withheld by AdminiStar on December 8, but because the issue of priority in the accounts receivable wasn't ripe, took Health Care Services's request for direct payment under advisement. Lock Realty, Health Care Services, and National City Bank have since filed briefs professing a superior interest in Americare's accounts receivable.[3]

The security agreements between the intervenors—Health Care Services and National City Bank—and Americare are straightforward collateral arrangements. *See* Credit Recovery Systems, LLC v. Heike, 158 F. Supp.2d 689, 693 (E.D. Va. 2001) (noting that loans by healthcare providers, which are secured by Medicare receivables, are straightforward collateral arrangements). Health Care Services provided housekeeping and laundry services for certain Americare nursing homes, and in exchange for immediate payment, Health Care Services took a secured interest in Americare's accounts receivable. Health Care Services perfected its security interest on November 4, 2005 by filing a UCC financing statement with the Indiana Secretary of State. National City Bank took an interest in Americare's accounts receivable to secure payment under a loan agreement with Heritage Medical Properties, an affiliate of Americare. National City perfected its security

---

[3]Health & Hospital of Marion County is another entity whose interests have been impacted by this litigation; its motion to intervene was granted on January 29. HHC says its entitled to Medicare payments from AminaStar for services rendered at certain nursing facilities that were transferred from Americare to HCC on October 1. HHC moves to amend the courts November 17 and December 8 orders so that funds can be released under specific provider numbers. *See* DOCUMENT # 114. Lock Realty also moves to amend the December 8 order so that direct payment can be made to LRC, LLC, the entity running a Goshen nursing home in Lock Realty's possession per an order in *Lock II*. *See* DOCUMENT # 135.

interest on November 3, 2005 by filing a UCC financing statement with the Indiana Secretary of State.

Health Care Services and National City say their claim in the sequestered funds is superior to Lock Realty's claim because they each have a secured interest in Americare's accounts receivable that was perfected before Lock Realty became a judgment creditor. Lock Realty says the funds at issue are Medicare payments, so the federal "anti-assignment" statute governs, rendering those interests in the accounts receivable "ineffective and unenforceable." Lock Realty asserts that its status as a judgment creditor allows it to obtain the subject funds before the enforcement of a security interest. The court doesn't agree.

The anti-assignment statute, 42 U.S.C. § 1395(c), prohibits medicare funds being "paid directly by the government to someone other than the provider, but it does not prohibit a third party from receiving Medicare funds if they first flow through the provider." DFS Secured Healthcare Receivables Trust v. Caregivers Great Lakes, Inc., 384 F.3d 338, 350 (7th Cir. 2004).[4] That is, the statute doesn't

---

[4] 42 U.S.C. § 1395(c) provides:

> No payment which may be made to a provider of services under this subchapter for any service furnished to an individual shall be made to any other person under an assignment or power of attorney; but nothing in this subsection shall be construed (1) to prevent the making of such a payment in accordance with an assignment from the provider if such assignment is made to a governmental agency or entity or is established by or pursuant to the order of a court of competent jurisdiction, or (2) to preclude an agent of the provider of services from receiving any such payment if (but only if) such agent does so pursuant to an agency agreement under which the compensation to be paid to the agent for his services for or in connection with the billing or collection of payments due such provider under this subchapter is unrelated (directly or indirectly) to the amount of such payments or the billings therefor, and is not dependent upon the actual collection of any such payment.

prevent a creditor from securing a loan by Medicare receivables. Id. ("The appellants cite no case and we have uncovered none, which interpret this statue to prohibit a provider's assignment of Medicare or Medicaid receivables to a non-provider."); *see also* In re Missionary Baptist Foundation of America, Inc., 796 F.2d 752, 759 (5th Cir. 1986) (affirming the decision of the district court and holding that the Bank took a valid security interest in the debtor's accounts receivable due from Medical care payments); Credit Recovery Systems, LLC v. Heike, 158 F. Supp.2d at 693 ("[T]he Court notes that neither the Medicare nor Medicaid statutes expressly proscribe a provider's assignment of the general right to receive Medicare or Medicaid receivables to a nonprovider."); In re American Care Corp., 69 B.R. 66, 67 (Bkrtcy. N.D. Ill. 1986); In re East Boston Neighborhood Health Center Corp., 242 B.R. 562, 573 (Bkrtcy. D. Mass. 1999) ("Nothing in these statutes prohibits the Debtor, as provider, from granting a security interest in its receivables under these programs or invalidates such security interests. By prohibiting the governmental insurer from making payment on the receivables to anyone other than the Debtor, the statutes may impair the Defendants' ability to seek payment on the receivables from the governmental insurer without the provider's cooperation, but that cooperation may well be available, and the statutes do not impair the Defendants' ability to enforce their security interests once payment has been issued."). The financing arrangements

---

4

in this are case are valid and in accord with the federal anti-assignment statute, so Lock Realty cannot enforce its judgment to the extent satisfaction would infringe on a superior interest in the receivables. *See, e.g.,* In re American Care Corp., 69 B.R. at 67 (denying junior creditor's motion to terminate adequate protection payment to senior creditor who was entitled such protection pursuant to its valid security interest in Medicare receivables).

A perfected security interest is superior to a judgment lien creditor's claim in property. IND. CODE § 26-1-9.1-317 (2000) (formerly § 26-1-9-301); Commercial Credit Counseling Services, Inc. v. W.W. Grainger, Inc., 840 N.E.2d 843, 848 (Ind. Ct. App. 2006) (citing IND. CODE § 26-1-9.1-317); *see also* Slodov v. United States, 436 U.S. 238, 257 n.22 (1978) (citing UCC § 9-301); Grain Merchants of Indiana, Inc. v. Union Bank and Savings Co., 408 F.2d 209, 213 (7th Cir. 1969) (citing UCC § 9-301); Wilson v. Royal Motor Sales, Inc., 812 N.E.2d 133, 135 (Ind. Ct. App. 2004) (recognizing Indiana's legislative adoption of the UCC); UCC § 9-301 COMMENT 1; J. WHITE AND R. SUMMERS, UNIFORM COMMERCIAL CODE § 33-2 at 278 (5th ed. 2002). By filing the appropriate financing statement with the Indiana Secretary of State in November 2005, both Health Care Services and National City Bank perfected their secured interest in Americare's accounts receivable before Lock Realty became a judicial creditor, so their claims to the sequestered funds are superior to that of Lock Realty. Commercial Credit Counseling Services, Inc. v. W.W. Grainger, Inc., 840 N.E.2d at 848 ("[I]f a security interest is not perfected prior to issuance of a judicial lien, then the security interest may be rendered

5

subordinate to that judicial lien); IND. CODE § 26-1-9.1-203; IND. CODE § 26-1-9.1-310; IND. CODE § 26-1-9.1-317; IND. CODE § 26-1-9.1-322; *see also* Grain Merchants of Indiana, Inc. v. Union Bank and Savings Co., 408 F.2d at 213 ("[B]y promptly filing the financing statements required by the Code, the Bank's security interest in the future accounts receivable then became superior to subsequent liens obtainable by 'proceedings on a simple contract.'").

Both Health Care Services and National City Bank seek an order directing AdminiStar to pay them the monies, which represent their secured interest in the accounts receivable. The intervenors acknowledge that federal law preempts non-judicial enforcement under the UCC, but maintain they can receive direct payment from the government by order of the court under the Medicare regulations. The court agrees.[5]

---

[5]Lock Realty states in its response to National City Bank's request for a ruling on priority that, "[f]raming the issue as a priority fight, National City advances a traditional UCC analysis despite its prior admission that the UCC is preempted in this area." This assertion misstates National City Bank's position. *See* DOC. NO. 109, ¶ 15. Courts that have addressed the interplay between Article 9 and the federal anti-assignment statute have distinguished between the ability to establish priority in Medicare receivables under the UCC and the limited ability to exercise the remedies typically afforded by a perfected security interest — specifically collection through direct assignment. *See, e.g.,* Credit Recovery Systems, LLC v. Heike, 158 F. Supp.2d at 693 ("Whether such arrangements [loans collateralized by Medicaid and Medicare receivables] are permissible, however, is not the issue in this case. The issue here is whether a provider can effectively assign the right to direct payment from the Government, such that CRS could directly receive any Medicare or Medicaid payments that might be due and owing to Hieke or Family Foot."; In re American Care Corp., 69 B.R. at 67 ("Whether there is authority permitting actual collection of the accounts receivable directly by the Main Bank is not before the Court and the Court will not grant an advisory ruling."). The intervenors' interests in the receivables are valid and superior to Lock Realty's judicial lien, so the court must determine which remedies, if any, may be employed in the enforcement.

The anti-assignment statute provides in part, "nothing in this subsection shall be construed (1) to prevent the making of such a [direct] payment in accordance with an assignment from the provider if such assignment is . . . established by or pursuant to the order of a court of competent jurisdiction." 42 U.S.C. § 1395g(c). The federal regulation that mirrors this statute provides, "Medicare may pay [direct payments to an assignee] under an assignment established by, or in accordance with, the order of a court of competent jurisdiction . . . ." 42 C.F.R. § 424.73(b)(2). Lock Realty says the intervenors "lack the ability to enforce payments of the funds from AdminStar"; it cites Credit Recovery Systems, LLC v. Hieke, 158 F. Supp. 2d at 692-696 in support of its argument.

In Credit Recovery v. Hieke, a podiatric clinic pledged an interest in its Medicare and Medicaid receivables as collateral to secure a loan from a lender. When the clinic defaulted on the loan, the lender took possession of the clinic's assets. The lender then sold the accounts, including the right to collect on unpaid Medicare receivables, to Credit Recovery Systems. Thereafter, the clinic entered into a settlement agreement with the government, pursuant to which it abandoned its rights to any unpaid Medicare and Medicaid claims. Credit Recovery Systems filed an action seeking a declaratory order that the prior assignments were valid so that it could file a claim with the government for Medicare and Medicaid funds. The court framed the issue as, "[w]hether a provider can effectively assign the right to direct payment from the Government." The court held:

7

> The statute pertaining to the assignment of Medicaid and Medicare receivables creates a strong presumption against assignment, and only permit direct payments to an assignee if the assignment is created by or pursuant to a court order. The plain import of the statutes and regulations is that the Court's order must be entered contemporaneously with the assignment of the right to direct payment, not after-the-fact as CRS posits in the instant case. CRS's reading of the statute would render the anti-assignment provision a nullity. The statutes and regulations do not permit the Court to enter an order that merely validates a prior assignment for past due sums. It is undisputed that in the instant case neither the June 6, 1998 assignment from Hieke and Family Foot to Sky/Mid Am nor the September 1, 1999 assignment from Sky/Mid Am to CRS were "created by" or "pursuant to" an order of a court of competent jurisdiction.

The court isn't persuaded that the district court's reasoning in Credit Recovery v. Hieke applies here.

The sale of the receivables in Credit Recovery v. Hieke gave a non-provider the right to file Medicare and Medicaid claims for direct payment from the government. Credit Recovery v. Hieke, 158 F. Supp. 2d at 693 ("The issue here is whether a provider can effectively assign the right to direct payment from the Government, such that CRS could directly receive any Medicare or Medicaid payments that might be due and owing to Hieke or Family Foot. As Family Foot is owed no money from the Government, does CRS's claim rise higher than Family Foot?"). That court reasoned that a retroactive validation of such an arraignment would make the anti-assignment statute a nullity. The court agrees.

The anti-assignment statute was passed to curtail the problem of so called "factoring agreements" where "physicians and other persons providing medical services . . . reassigned their Medicare and Medicaid receivables to other

8

organizations or groups . . . [which] purchased the receivables for a percentage of their face value, submitted claims and received payments in their name." Danvers Pathology Associates, Inc. v. Atkins, 757 F.2d 427, 430 (1st Cir. 1985) (quoting H.R. Rep. No. 393, 95th Cong., 1st Sess. 48, reprinted in 1977 U.S. Code Cong. & Ad. News 3039, 3051.). "Such reassignments were a source of incorrect and inflated claims for services and created administrative problems with respect to determinations of reasonable charges and recovery of overpayments." Id. Allowing a party to validate a prior assignment of direct payment doesn't prevent non-providers from making incorrect and inflated claims against the government, so the court agrees that an assignment which creates the opportunity for a non-provider to submit a false claim should be made contemporaneous with a court order under 42 C.F.R. § 424.90.

This case, however, differs from Credit Recovery v. Hieke because neither collateral agreement creates a right to file a claim for direct payment from AdminiStar. In other words, the intervenors' rights in the funds flow through Americare since neither party can receive Medicare funds pursuant to their arraignment without subsequent judicial enforcement of the security agreement. Because the financing arrangements don't provide a non-provider with the opportunity to submit a false claim, the concerns addressed by the anti-assignment statute aren't implicated. *See, e.g.,* Bank of Kansas v. Hutchinson Health Services, Inc., 735 P.2d 256, 259 (Kan. Ct. App. 1987). A court-ordered

9

assignment pursuant to 42 C.F.R. § 424.90, directing payment from AdminiStar to Health Care Services or National City Bank doesn't violate federal law.[6]

Also before the court is Lock Realty's motion for a supplemental award of attorneys' fees and costs. "Indiana adheres to the 'American Rule' with respect to the payment of attorney fees and requires that parties pay their own attorney fees absent an agreement between the parties, statutory authority, or rule to the contrary." Shepard v. Schurz Communications, Inc., 847 N.E.2d 219, 226 (Ind. Ct. App. 2006). Lock Realty has the burden of directing the court to any statute, rule, or agreement that rebuts the American Rule. Depeyster v. Town of Santa Claus, 729 N.E.2d 183, 190-191 (Ind. Ct. App. 2000).

Lock Realty's motion doesn't reference any such authority, concluding simply that its "entitlement to recover its fees is not a matter of contention." Not until its reply did Lock Realty argue that attorneys' fees are appropriate pursuant to the terms of a guaranty entered into by the parties, and because the additional costs are the result of U.S. Health's obdurate behavior that gives rise to an exception to the American rule. The defendants move the court to deem these arguments waived. Their motion is well taken.

---

[6]The court recognizes that the district court in Credit Recovery v. Hieke declined to validate a prior collateral agreement that wasn't made contemporaneous with a court order, but as discussed, the court doesn't agree that such arrangements must be made contemporaneous with a court order. No other case allowing such financing arraignments has required a contemporaneous court order for purposes of establishing a secured interest in collateral, and the court believes such a superfluous requirement would severely hamper health care providers' ability to finance the costs of providing medical care.

Arguments not developed in a party's initial brief and raised in a meaningful way only in its reply are waived. U.S. v. Alhalabi, 443 F.3d 605, 611 (7th Cir. 2006) (citing Harper v. Vigilant Ins. Co., 433 F.3d 521, 528 (7th Cir. 2005) ("The argument is more developed in [the] reply brief, but this is too little, too late, for 'arguments raised for the first time in a reply brief are [also] waived.'")). Lock Realty asserts in its motion that it is entitled to attorneys' fees because "the fees are reasonable and should be expected because of the complexity of the issues and the vigorous opposition by the Defendants on virtually every issue and the involvement of the Intervenors." This assertion provides no basis for an award of attorneys' fees under the American rule, and because Lock Realty must be deemed to have waived any arguments raised in its reply, the court denies its motion for supplement award of attorneys' fees and costs.

For the foregoing reasons, the court finds that both Health Care Services and National City Bank have a perfected security interest in Americare's accounts receivable, and their claim in the sequestered funds is therefore superior to that of Lock Reality. The court also finds that an order directing Medicare payments from AdminiStar to either Health Care Services or National City Bank under 42 C.F.R. § 424.90 would not be contrary to 42 U.S.C. § 1395(c). But because Health Care Services requests a two-week extension of time to respond to National City Bank's priority claim, and because HHC and Lock Realty have both filed a motion to amend, seeking funds under certain provider numbers that have been frozen,

11

the court declines at this time to rule on any request for direct payment from AdminiStar.

Accordingly, the court DENIES Lock Realty's supplemental motion for attorneys' fees [Doc. No. 107 in 3:05-CV-715]; GRANTS IN PART Health Care Services's motion for a ruling on priority [Doc. No. 108 in 3:05-CV-715 and Doc. No. 97 in 3:06-CV-487]; GRANTS the defendants' motion to deem waived arguments in Lock Realty's reply brief [Doc. No. 121 in 3:05-CV-715]; GRANTS Health Care Services's motion for extension of time to respond [Doc. No. 128 in 3:05-CV-715 and Doc. No. 106 in 3:06-CV-487]; and SETS this matter for a hearing on March 7 at 1:30 P.M. to address any remaining priority issues (including the requests for an order directing payment of Medicare funds), HHC's motion to amend the court's November 17 and December 8 orders [Doc. No. 114 in 3:05-CV-715], and Lock Realty's motion to amend the December 8 order [Doc. No. 135 in 3:05-CV-715 and Doc. No. 107 in 3:06-CV-487]. Any additional briefs addressing these issues shall be filed no later than March 2.

SO ORDERED.

Entered:   February 27, 2007


　　　　　　　　　　　　　　　　/s/ Robert L. Miller, Jr.
　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　United States District Court