UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LOCK REALTY CORPORATION IX,    )
    )
       Plaintiff    )
    )
    v.    )    CASE NO. 3:05-CV-715 RM
    )
U.S. HEALTH, LP, *et. al.,*    )
    )
       Defendants    )

## OPINION AND ORDER

Lock Realty's third motion to amend the supplemental judgment entered on July 14, 2006 to award additional attorneys' fees [Doc. No. 168], its second bill of costs [Doc. No. 167], and the defendants' motion to strike paragraph 7 of the affidavit Lock Realty submitted in support of its fee request [Doc. No. 172] pend before this court. For the following reasons, the motion to strike is denied, the court grants motion to amend the supplemental judgment in part and denies it in part, and awards Lock Realty $86,675.50 in additional attorneys' fees and $1,106.02 in additional costs.

## I. BACKGROUND

After defendant U.S. Health, LP defaulted on its payment obligations under the terms of a lease agreement with Lock Realty Corporation IX, Lock Realty filed suit against the limited partnership, Larry New, John Bartle, and Rebecca Bartle (the limited partners and personal guarantors of the lease) asserting claims for

breach of the lease and the guarantees, and seeking immediate possession of the leased premises, damages, attorneys' fees and costs. Pursuant to a stipulation of the parties, a judgment was entered in favor of Lock Realty in the amount of $485,430.56 on June 21, 2006 [Doc. No. 47], and a supplemental judgment was entered on July 14, 2006 awarding Lock Realty $29,238.85 in attorney fees [Doc. No. 50]. The original and supplemental judgments were amended later to add AmeriCare Living Centers III as a judgment debtor. [Doc. Nos. 58 and 59].

Collecting on the judgment reportedly was more difficult, requiring the expenditure of more attorneys' fees and costs. Lock Realty filed two motions to supplement its fee request [Doc. Nos. 107 and 155]. The court denied the first one because Lock Realty didn't state a basis for the fee award, and denied the second one because Lock Realty didn't provide documentation about the fees and costs requested. [Doc. No.140 and 166]. Lock Realty returns to the court seeking to amend the supplemental judgment to include the additional attorneys' fees ($100,324.00) and costs ($1,357.86) it incurred.

## II. STANDARD OF REVIEW

State law governs a fee award in a diversity case. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 259 n.31 (1975); Jackman v. WMAC Inv. Corp., 809 F.2d 377, 383 (7th Cir 1987). While Indiana recognizes the parties' ability to shift the obligation to pay attorney fees by contract or agreement, the fees must be reasonable. Stewart v. TT Commerical One, LLC, 911 N.E.2d 51, 58

(Ind. App. 2009). The party seeking the award must produce objective evidence of the nature of the services rendered and the reasonableness of the fee requested. *See* Jackman v. WMAC Inv. Corp., 809 F.2d at 383; *see also* Posey v. Lafayette Bank & Trust Co., 583 N.E.2d 149, 152 (Ind. App. 1991) ("Where the amount of the fee is not inconsequential, there must be objective evidence of the nature of the legal services and the reasonableness of the fee."). Professional Conduct Rule 1.5(a) is used as a guide in determining the reasonableness of an attorney fee award in Indiana, Order for Mandate of Funds Montgomery County Council v. Milligan, 873 N.E.2d 1043, 1049 (Ind. 2007):

> A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.  The factors to be considered in determining the reasonableness of a fee include the following:
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent.

An award of costs generally is a matter of procedure governed by federal law under Federal Rule of Civil Procedure 54(d). *See* In re Merrill Lynch Relocation

Mgmt., Inc., 812 F.2d 1116, 1120 n.2 (9th Cir. 1987); Muslin v. Frelinghuysen

Livestock Managers, Inc., 777 F.2d 1230, 1235-36 (7th Cir. 1985).


III.  DISCUSSION

A.  *Attorneys' Fees*

Lock Realty seeks attorney fees and expenses under paragraph 17 of the

lease agreement (which provides that the prevailing party may recover reasonable

attorneys' fees and court costs), and the personal guarantees executed by

defendants Larry New, John Bartle, and Rebecca Bartle.[1]

The starting point in deciding any fee request's reasonableness is the

lodestar – the rate charged and the hours worked. Fortner v. Farm Valley-

_____

[1] The guarantees provide that:

Guarantor [New, John Bartle, and Rebeccas Bartle] agrees to pay, upon demand, all expenses, including attorneys' fees and legal expenses, paid or incurred by Landlord [Lock Realty] in endeavoring to collect or enforce the Liabilities or any part thereof and in enforcing this Guaranty.

They define "Liabilities" to include:

(i) ...payment when due of all rents, charges, fees and additional payments and indebtedness due by Tenant to Landlord or others under or pursuant to the Lease... [and]

* * *

(iii) ...payment of all damages that may arise or be incurred by Landlord in consequence of Tenant's failure to perform [all covenants, conditions and agreements of the Tenant which are contained in the Lease and schedule attached thereto].

(Exhs. 2-4 to the Cmplt.).

4

Applewood Apartments, 898 N.E.2d 393, 400 (Ind. App. 2008); In re Estate of Inlow, 735 N.E.2d 240, 257 (Ind. App. 2000).

1. *Rates Charged*

In support of its motion for fees, Lock Realty submitted the affidavit of lead counsel, Timothy Maher, and a 51-page billing statement that shows hourly billing rates for attorneys ranging from $165.00 to $370.00, and an hourly rate for paralegals of $135.00. Mr. Maher attests that from June 22, 2006 through March 29, 2007, thirteen attorneys (Alan Feldbaum, Katherine Bishko, Mark Adey, James Grubbs, Stacy Cook, Alice Springer, Michael Watkins, Damon Leichty, Laura Seng, Michael Palmer, Gary Hoke, Sarah Kuhny and himself), two paralegals (Judy Shroyer and Gretchen Snyder), and an investigator (David Williams) worked a total of 405.8 hours on this case, at a cost of $100,324.50.

Mr. Maher attests in paragraph 7 of his affidavit that:

> Lock was charged standard rates for this litigation. Based on the legal experience, education, and training of the attorneys and paralegals involved and the nature of this case, I believe these standard billable rates are reasonable and customary rates to be charged for people in this area and for the work that was done.

The defendants contend that the rates charged aren't reasonable, that Mr. Maher's affidavit, specifically paragraph 7, doesn't prove that the rates are reasonable or customary and is inadmissible under Federal Rule of Evidence 602, and that Lock Realty hasn't offered any objective evidence with respect to a number of the factors identified in Indiana Professional Conduct Rule 1.5(a). The

defendants have moved to strike paragraph 7 of Mr. Maher's affidavit [Doc. No. 172], citing in support Price v. Rochford, 947 F.2d 829, 832 (7th Cir. 1991), and Pizano v. Knight, 2010 WL 379427 at 2 n.17 (S.D. Ind. Jan. 25, 2010) (holding that an affidavit based upon "information and belief" is insufficient for the purposes of opposing summary judgment under FED. R. CIV. P. 56(e)).

The averments in paragraph 7 appear to be based only on Mr. Maher's beliefs when read in isolation, but the preceding paragraphs of his affidavit show that Mr. Maher has personal knowledge of the facts set forth, and is competent to testify as to those facts. Mr. Maher's affidavit and attached supporting documentation (evidencing the actual billing rates charged by the attorneys and paralegals identified in the affidavit) are admissible under Federal Rule of Evidence 602, and presumptively establish the market rates for their services. Spegon v. Catholic Bishop of Chicago, 175 F.3d 544, 555 (7th Cir. 1999); People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205, 90 F.3d 1307, 1310 (7th Cir. 1996). The defendants haven't presented any evidence to rebut that presumption. Accordingly, the court denies their motion to strike paragraph 7 of Mr. Maher's affidavit.

## 2. *Hours Expended*

The defendants contend that the issues present didn't justify the number of people working on this case, and that Lock Realty's supplemental fee request includes fees for services which aren't compensable because they weren't related

to this litigation (*i.e.*, a Medicaid application and issues raised by intervenors), were provided by people who weren't identified in Mr. Maher's affidavit (Joseph Fullenkamp, Timothy Emerick, and Erin Thacker-Uhl), were excessive, redundant or otherwise unnecessary, and were provided after the amended judgment was deemed satisfied and released as to all defendants on March 9, 2007. The defendants contend that the inclusion of time spent on these matters, the lack of detail and documentation, and the use of block billing make it too difficult to tell whether the hours expended were reasonable and necessary, and ask the court to either strike the problematic entries, reduce the proposed fee by a reasonable percentage, or deny the request in its entirety.

The defendants cite <u>Hensley v. Eckerhart</u>, 461 U.S. 424 (1983), and <u>Harper v. City of Chicago Heights</u>, 223 F.3d 593 (7th Cir. 2000), as authority for reducing the fee award by a percentage the court deems reasonable. But state law governs the fee award in this case, not federal law, *see* <u>Alyeska Pipeline Service Co. v. Wilderness Society</u>, 421 U.S. at 259 n.31; <u>Jackman v. WMAC Inv. Corp.</u>, 809 F.2d at 383, and the defendants have provided no authority under Indiana law that would authorize the type of reduction they seek for the reasons they assert.

The party seeking the award bears the burden of producing objective evidence of the nature of the services rendered and the reasonableness of the fee requested. *See* <u>Jackman v. WMAC Inv. Corp.</u>, 809 F.2d at 383; *see also* <u>Posey v. Lafayette Bank & Trust Co.</u>, 583 N.E.2d 149, 152 (Ind. App. 1991). Lock Realty contends that Mr. Maher's affidavit satisfies that burden, and argues in its reply

that the fees requested are reasonable and that the factors identified in Indiana Rule of Professional Conduct 1.5(a) weigh in favor of awarding all fees and costs requested. Lock Realty concedes that fees billed for services relating to the Medicaid application weren't related to this case, but asks that they be awarded here so it doesn't have to amend its fee application in <u>Lock Realty Corp. V. U.S. Health, LP</u>, Cause No. 3:06-CV-487 (N.D. Ind) (*Lock II*). Lock Realty also contends that the defendants' objections to time spent on issues raised by intervenors are "*non sequitors*" because there were no intervenors in this case. Lock Realty doesn't address the defendants' objections to fees billed after the judgment was satisfied and released, but nevertheless concludes that all fees and costed billed are reasonable and "should be awarded without reduction."

Mr. Maher's affidavit shows the actual billing rates charged by the attorneys and paralegals identified in the affidavit and presumptively establishes the market rates for their services, but it doesn't conclusively establish the reasonableness and necessity of the rates charged and time expended. While Lock Realty argues that the factors listed in Indiana Professional Conduct Rule 1.5(a) demonstrate the reasonableness of its fee request and weigh in favor of granting it in its entirety, it provides no objective evidence to support those claims.

 Lock Realty asserts that the defendants' resistance to collection  presented novel and difficult issues justifying the number of attorneys involved,  including "navigating an Enterprise of over 80 entities," "extensive research to uncover assets," "UCC preference and creditor's rights issues," "two proceedings

supplemental," and "atypical pleadings and procedural issues." Locating the defendants' assets might have been a difficult task given the corporate structures involved, but the court can't find on this record that the proceedings and issues in this case were novel or "atypical."

Lock Realty's assertions that it has had an attorney-client relationship with its attorneys "for a number of years;" that "[e]ach of the attorneys who billed time on this matter were called upon with respect to matters within their area of expertise;" and that "economies were achieved in this matter by engaging lawyers in their particular areas of expertise rather than having a smaller set of lawyers addressing issues about which they did not have immediate familiarity," are conclusory and undocumented, and leave several questions unanswered. How many years is "a number"? What was the area of each attorney's expertise? Was expertise required for the work performed? Was there any duplication of expertise? The court can't tell from the record before it. That counsels' representation of Lock Realty precluded other employment is a given in any case, but the number of attorneys involved and the time expended in this case appears to have been a matter of discretion, not necessity.

Lock Realty contends that it took thirteen attorneys, two paralegals, and an investigator more than 400 hours at a cost of $100,324.00 to collect the $514,669.41 awarded to it because the defendants resisted collection efforts. But no fees were billed for five of the fifteen individuals named in Mr. Maher's affidavit (Springer, Watkins, Seng, Palmer and Snyder), and the billing statement includes

time expended by three people not named in the affidavit (Fullenkamp, Emerick, and Thacker-Uhl), and whose title, legal experience, education, and training weren't identified or verified. Mr. Maher's affidavit doesn't establish the reasonableness of the hourly rates charged by those three individuals ($325.00 to $140.00), or the necessity of the work they performed. Accordingly, the fee award must be reduced by the total amount billed for their services ($342.50).[2]

The billing statement also includes fees in the amount of $285.00 (1.5 hrs) billed by Stacy Cook on October 6 and October 9, 2006 for work relating to Lock Realty's Medicaid application. Lock Realty concedes that these fees aren't related to this case, but asks the court to award them here to avoid the need to amend its fee petition in *Lock II*.[3] The court denied Lock Realty's request for fees relating to its Medicaid application in that case, *see* <u>Lock Realty Corp. V. U.S. Health, LP</u>, slip copy, 2011 WL 4688823 at * 6 (N.D. Ind. 2011), and declines to do so here for the same reasons–they weren't related to the litigation.

Lock Realty contends that the defendants' objections to time spent on issues raised by HCSG and National City Bank lack merit because "[t]here were no intervenors in this case." Three motions to intervene were filed in this case (and in *Lock II*): the first by Healthcare Services Group, Inc. (HCSG) on November 21,

---

[2] The January 29, 2007 entry for Timothy Emerick in the amount of $54.00; the May 3, 2007 entry for Erin Thacker-Uhl in the amount of $126.00; and the May 9, 2007 entry for Joseph Fullenkamp in the amount of $162.50.

[3] The court notes, however, that the billing statement in 3:06-CV-486 contained an identical entry for the services provided by Stacy Cook on October 6, 2006 [Doc. No. 307-2 at p. 33].

2006 [Doc. No. 81]; the second by National City Bank on December 14, 2006 [Doc. No. 98], and the third by The Health and Hospital Corp. of Marion County (HHC) on January 26, 2007 [Doc. No. 113]. The court granted all three motions, and a number of motions were filed relating to issues raised by the intervenors before the amended judgment was deemed satisfied and released in March 2007.

Lock Realty's billing statement contains several entries that describe work performed with respect to the intervenors and appear to seek compensation for those services:

| Date | Name | Hours | Amount | Description |
| --- | --- | --- | --- | --- |
| 11/22/06 | Adey | .70 | $ 217.00 | "Received telephone call from counsel for HCSG regarding issues with garnishment..." |
| 12/11/06 | Maher | .30 | 90.00 | "Draft introduction, fact and conclusion sections of response to HCSG's motion to intervene and for payment of held funds..." |
| 1/4/07 | Maher | 1.20 | 360.00 | "Receipt and review of order granting National City's Motion to intervene in Lock I..." |
| 1/26/07 | Kuhny | .50 | 97.50 | "Received Motions filed by National City; Office conference with attorneys Feldbaum, Adey and Maher re: settlement agreement, agreed order and |

| Date | Attorney | Hours | Amount | Description |
|---|---|---|---|---|
| | | | | motions filed by National City." |
| 1/29/07 | Kuhny | 3.20 | 624.00 | "...Discussions with attorneys for HHC and Vendor..." |
| 2/6/07 | Kuhny | 1.60 | 312.00 | "Reviewed National City's Motion in Suppor of Request for Ruling on Priority filed by HCSG..." |
| 2/12/07 | Maher | .20 | 60.00 | "Telephone conferences with HCSG and Nat City counsel re status of settlement discussions..." |
| 2/19/07 | Maher | .60 | 180.00 | "Receipt and review of Nat City's response to motion to vacate pro supp orders and defendants' reply to same." |
| 2/20/07 | Maher | 4.30 | 1,290.00 | "...telephone conference with HCSG and Nat city counsel re [response to defendants' motion to vacate pro supp orders], effect of order sought on priority issues; receipt and review of HCSG's response to motion to vacate." |
| TOTALS: | | 12.6 hrs. | $3,103.50 | |

Many of these entries also appear on the billing statement in *Lock II*.[4] The use of block billing might account for the overlap, but it highlights the difficulties opposing parties and the court face in determining whether the services and amounts billed were reasonable and necessary to this litigation. Block billing isn't prohibited in fee petitions, Farfaras v. Citizens Bank and Trust of Chicago, 433 F.3d 558, 569 (7th Cir. 2006), but it "isn't without consequence." *See* Loparex, LLC v. MPI Release Technologies, LLC, 2011 WL 2066666 at *3 (S.D. Ind. May 25, 2011). The use of block billing, inclusion of services that can't be identified as related to or compensable in this case, the lack of detail with respect to the type of services rendered and the amount of time expended on each, and the overlap between this case and *Lock II* make it impossible to determine whether the amounts claimed in the challenged entries were reasonable and necessary to this litigation. The party seeking fees must present evidence of the amount of time actually spent on the compensable tasks, and the reasonableness of the fee requested for those services. Id. Lock Realty's submission doesn't meet that burden with respect to the entries listed above, so the court declines to award compensation ($3,103.50) for those services.

The defendants also object to the inclusion of time spent and fees billed for services that were provided after the amended judgments were deemed satisfied

---

[4] Examples include the December 11, 2006, February 12, 2007 and February 19, 2007 entries for Timothy Maher, and the January 26, 2007 entry for Sarah Kuhny. (*See* Doc. No. 307-2 in Cause No. 3:06cv487).

and released on March 9, 2007 and were unrelated to the fee application. Lock Realty didn't respond to that objection, present any evidence or authority establishing a right to compensation for the services in question, or identify with sufficient particularity the amount of time expended and fee billed for services which may have been compensable (*i.e.*, related to the supplemental fee application), but were lumped together with non-compensable services.[5] Without such a response, the services identified in the following entries haven't been shown to have been necessary, reasonable, and adequately documented. These fees can't be charged to the defendants:

---

[5] Examples include the April 2, 2007 entry for Mark Adey, the April 3, 2007 entry for Sarah Kuhny, and the April 16, 2007 entry for Timothy Maher.

| Date | Name | Hours | Amount |
|------|------|-------|--------|
| 3/09/07 | Adey | 1.70 | $  561.00 |
| 3/16/07 | Adey | .80 | 264.00 |
| 3/22/07 | Adey | .50 | 165.00 |
| 3/22/07 | Maher | 3.10 | 930.00 |
| 3/23/07 | Maher | 4.10 | 1,230.00 |
| 3/23/07 | Adey | .80 | 264.00 |
| 3/23/07 | Feldbaum | .50 | 185.00 |
| 3/26/07 | Feldbaum | .40 | 148.00 |
| 3/26/07 | Kuhny | 1.00 | 195.00 |
| 3/26/07 | Adey | 1.40 | 462.00 |
| 3/26/07 | Maher | .60 | 180.00 |
| 4/02/07 | Adey | 1.00 | 330.00 |
| 4/03/07 | Adey | .40 | 132.00 |
| 4/03/07 | Kuhny | 1.50 | 292.50 |
| 4/03/07 | Hoke | .50 | 95.00 |
| 4/05/07 | Adey | .30 | 99.00 |
| 4/05/07 | Kuhny | 1.50 | 292.50 |
| 4/06/07 | Maher | .30 | 90.00 |
| 4/16/07 | Kuhny | 1.20 | 234.00 [6] |
| 4/16/07 | Adey | .40 | 132.00 |
| 4/16/07 | Maher | 6.80 | 2,040.00 |
| 4/30/07 | Adey | .30 | 99.00 |
| 5/01/07 | Kuhny | .30 | 58.50 |
| 5/01/07 | Adey | .40 | 132.00 |
| 5/01/07 | Maher | .60 | 180.00 |
| 5/02/07 | Maher | .10 | 30.00 |
| 5/02/07 | Adey | .20 | 66.00 |
| 5/02/07 | Hoke | .80 | 152.00 |
| 5/03/07 | Adey | .30 | 99.00 |
| 5/04/07 | Maher | .50 | 150.00 |
| 5/04/07 | Adey | 1.10 | 363.00 |
| 5/04/07 | Hoke | .70 | 133.00 |
| 5/10/07 | Hoke | .20 | 38.00 |

_____

[6] The billing statement contains two entries for Sarah Kuhny on April 16, 2007–both billing for time expended "Review[ing] Reply in Support of Lock's Motion to Amend Judgments.  Office conference with attorney Maher regarding same."  The first seeks $234.00 (1.2 hours)(and includes time expended on legal research which may or may not have been related to the fee application); the second seeks $117.00 (.6 hours). The court finds the later ($117.00) to be reasonable and related to the fee application (a compensable expense), and denies the former ($234.00) as duplicative.

| | | | |
|---|---|---|---|
| 5/10/07 | Adey | .20 | 66.00 |
| 5/29/07 | Maher | .10 | 30.00 |
| Totals: | | 34.60 | $9,917.50 |

For the reasons stated, the court disallows the challenged entries in their entirety, and awards Lock Realty $86,675.50 in additional attorneys' fees.

### B. Bill of Costs

The award of costs is a matter of procedure governed by federal law under Fed. R. Civ. P. 54(d). *See* In re Merrill Lynch Relocation Mgmt., Inc., 812 F.2d 1116, 1120 n.2 (9th Cir. 1987); Muslin v. Frelinghuysen Livestock Managers, Inc., 777 F.2d 1230, 1235-36 (7th Cir. 1985). Rule 54(d) creates a presumption that the prevailing party will be awarded costs, but the court still must decide whether the amounts sought are allowable cost items and are reasonable in amount and necessity to the litigation. Little v. Mitsubishi Motors North America, Inc., 514 F.3d 699, 702 (7th Cir. 2008). A losing party arguing against an award of costs must make "an affirmative showing that taxed costs are not appropriate." Beamon v. Marshall & Ilsley Trust Co., 411 F.3d 854, 864 (7th Cir. 2005).

Lock Realty filed a bill of costs seeking an additional $1,357.86 in "other costs" related to its efforts to collect on the judgment. The exhibit attached to the bill of costs contains the date, quantity, amount, and a description of each expense. The defendants generally object to most of those expenditures and specifically to the charges for copying, Access Indiana/Civic net, messenger courier service, Pacer court filing system, and computerized legal research. They

contend the descriptions of those costs lack enough detail to tell whether they were reasonable and necessary to the litigation, and ask that they be excluded.

Lock Realty summarily responds that its submissions regarding the additional costs incurred are sufficient, and that "[i]f necessary, the Court can look to Lock's contemporaneously filed attorney fee application to verify assessments of costs for particular tasks." But the court shouldn't have to cross-reference the two documents, and can't determine whether the challenged expenses were reasonable or necessary given the cursory descriptions provided.

While copying costs are recoverable under 28 U.S.C. § 1920, the lack of detail with respect to those charges (*i.e.*, the purpose, type of documents copied, who they were copied for) makes it difficult to determine how may of the copies were related to the litigation, and whether the costs incurred were reasonable and necessary. It's also unclear from Lock Realty's submissions what the Access Indiana/Civic net, messenger courier services, and PACER system charges were for, or why they should be allowed to recover those expenses. Such questions wouldn't matter in many cases, but significance arises from the presence in the attorney records of matters not shown to have been related to this case. The lack of detail again makes it impossible to determine that those costs were reasonable and necessary. Accordingly, the court denies Lock Realty's request for costs related to copying, messenger courier services, Access Indiana, and the court's PACER system in the total amount of $122.83.

The computerized legal research entries on Lock Realty's invoice are considered to be attorney's fees, and are not recovered as "costs." <u>Haroco v. American National Bank & Trust of Chicago</u>, 38 F.3d 1429, 1440-41 (7th Cir. 2004); <u>McIlveen v. Stone Container Corp.</u>, 910 F.2d 1581, 1584 (7th Cir. 1990). The request for $129.01 for that research, accordingly, is denied.

IV. CONCLUSION

For the foregoing reasons:

(1) The defendants' motion to strike paragraph 7 of Mr. Maher's affidavit [Doc. No. 172] is DENIED; and

(2) Lock Realty's motion to amend the supplemental judgment awarding attorneys' fees and costs [Doc. No. 168] is GRANTED in part, and DENIED in part. The motion is DENIED to the extent Lock Realty seeks fees for legal services that: were provided by Joseph Fullenkamp, Timothy Emerick, and Erin Thacker-Uhl ($342.50); were unrelated to the litigation ($285.00); involved intervenors ($3,103.50); or were determined to be unnecessary, unreasonable or inadequately documented ($9,917.50), and is GRANTED in all other respects. The supplemental judgment entered on July 14, 2006 (and amended on September 25, 2006) is amended and Lock Realty is awarded $86,675.50 in additional attorneys' fees.

(3) Lock Realty's bill of cost [Doc. No. 167] is GRANTED in part, and DENIED in part. The motion is GRANTED with respect to costs which were

not opposed, in the total amount of $1,106.02; and DENIED with respect to the costs incurred for computer research, copying, messenger courier services, Access Indiana/Civic net  and PACER, in the total amount of $251.84.  Lock is awarded a total of $1,106.02 in additional costs.

SO ORDERED.

ENTERED:   January 10, 2012

          /s/ Robert L. Miller, Jr.
Judge
United States District Court,