UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LOCK REALTY CORPORATION IX,       )
                                  )
         Plaintiff                )
                                  )
    v.                            )   CASE NOS. 3:05-CV-715 RLM
                                  )             3:06-CV-487 RLM
U.S. HEALTH, LP, *et. al.,*       )
                                  )
         Defendants               )

OPINION AND ORDER

Lock Realty Corporation IX has been awarded more than $818,000.00 in attorneys' fees and costs in its pursuit of a breach of contract claim that generated three lawsuits and three appeals, culminated in two judgments in Lock's favor totaling $730,313.69 and one against, and required the expenditure of countless resources by the parties and the judiciary.[1] The appellate court affirmed the judgments in all three cases, but granted Lock Realty's request for fees in the consolidated appeal of *Lock I* (3:05-CV-715) and *Lock II* (3:06-CV-487) and remanded for a determination of the proper amount. Lock Realty Corp. IX v. U.S. Health, LP, 707 F.3d 764, 770-74 (7th Cir. 2013).

---

[1] In August 2013, Lock Realty filed yet another lawsuit based on an alleged breach of the same lease. See Lock Realty Corporation IX v. Americare Living Centers LLP et al, Cause No. 3:13cv994 (N.D. Ind.) (*Lock III*). The district court, Judge Lee, held that *res judicata* barred Lock's complaint in its entirety, dismissed the case, and awarded fees to the defendants. The judgment was affirmed on appeal, and the defendants were awarded appellate fees and expenses.

Lock Realty seized the opportunity on remand to reopen the underlying litigation and submit a new claim for fees and costs related to services that were provided after judgment was entered in *Lock II*. For reasons stated in the court's April 2, 2014 opinion and order, the court denied both requests.

Lock Realty's renewed motion for attorneys' fees and costs in the amount of $211,883.68 in now before the court. For the following reasons, the court GRANTS the motion in part and DENIES it in part.

I. STANDARD

State law governs the award of fees in a diversity case. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 259 n.31 (1975); Jackman v. WMAC Inv. Corp., 809 F.2d 377, 383 (7th Cir 1987). Indiana recognizes the parties' ability to shift the obligation to pay attorney fees by contract or agreement, but the fees must be reasonable. Stewart v. TT Commerical One, LLC, 911 N.E.2d 51, 58 (Ind. App. 2009). When the amount requested is substantial, as it is here, the party seeking the award must produce "objective evidence of the nature of the services and the reasonableness of the fee." Stewart v. TT Commercial One, LLC, 911 N.E.2d 51, 59 (Ind. App. 2009); Posey v. Lafayette Bank & Trust Co., 583 N.E.2d 149, 152 (Ind. App. 1991).

II. DISCUSSION

In support of its renewed motion for fees, Lock Realty submitted the affidavits of lead counsel, Timothy Maher and Mark Adey, [Doc. Nos. 419-1 and 419-4] and revised billing statements summarizing the work performed, rates charged, and hours billed by the attorneys and/or paralegals who worked on the appeal (Exhibit 1) and on post-judgment matters (Exhibit 2) [Doc. Nos. 419-2 and 419-3].[2]

Mr. Maher and Mr. Adey attest that they performed most of the work in these cases, but opine that it was reasonable, necessary, and cost-effective to enlist the help of nine other attorneys and two paralegals "given the complex history of these cases, the need to adequately protect Lock's right of recovery, the number of filings that were required to ensure the satisfaction of the judgment and to defend [Americare's] appeal," and "the uncertainty regarding the collectability of the judgment." (*See* Maher Affidavit at ¶ 10, 31, 35-38; Adey Affidavit at ¶ 16). The only objective evidence of the services provided, rates charged, and hours expended, is contained in the revised billing statements.

It's clear from Mr. Maher's affidavit that the statements aren't the actual billing records made or kept by Barnes & Thornburg, LLP in the course of its regularly conducted business, but rather summaries of those records prepared by

---

[2] For the sake of simplicity, the document references contained in this order are from Cause No. 3:06-CV-487. Duplicate filings were made in 3:05-CV-715.

Mr. Maher for purposes of this litigation. Mr. Maher asserts that the actual records weren't submitted because they contain confidential information, but attests that he reviewed the records before and after the court denied Lock Realty's first fee petition, eliminated or reduced the time expended on any work that was performed in relation to Lock's own appeal, and "to the extent possible" assigned specific time values to each of the remaining tasks. (Maher affidavit at ¶¶ 7 and 8). He notes, however, that there were some instances where the time spent on appeal was "inseparable", and cites as an example time spent traveling to Chicago for the Seventh Circuit settlement conference and oral argument.

Briefly summarized, the billing statements show that:

(1) six attorneys (Timothy Maher, Mark Adey, Alan Feldbaum, Alice Springer, Sarah Quinn Kuhny and Eric Thomason) worked a total of 185 hours at rates ranging from $265 to $505 an hour on Lock Realty's response to Americare's cross-appeal, for a total of $71,013.50 (Exhibit 1); and

(2) eleven attorneys (Timothy Maher, Mark Adey, Alan Feldbaum, J. Michael Grubbs, Alice Springer, Sarah Quinn Kuhny, Annette Hass England, Kyra Wagoner, Timothy Abeska, Eileen Pruitt and Eric Thomason) and two paralegals (Judy Shroyer and Sandra Allison) worked 339.3 hours at rates ranging from $180 to $505 an hour to enforce and collect the judgment after it was entered in July 2010; charged $132,900.50 for those

4

services; and incurred $7,969.68 in costs associated with their collection efforts (Exhibit 2). [Doc. Nos. 419-2 and 419-3].

Americare doesn't challenge the hourly rates charged, but it raises several objections to the number of hours billed. It contends that:

- The revised billing statements submitted by Mr. Maher weren't prepared at or near the time of the events recorded, aren't admissible under Fed. R. Evid. 802 and 803(6), and should be excluded in their entirety, or at least with respect to entries that changed as a result of Lock's after-the-fact attempt to assign specific times to specific tasks.[3]

- All duplicative entries[4] and entries that include any time expended on Lock Realty's appeal[5] are barred by the court's April 4, 2014 order denying Lock's first request and should be excluded.

---

[3] *See* examples on pp. 2-6 of Defendants' Objection to Plaintiff's Renewed Motion for Attorneys' Fees [Doc. No. 422 in 3:06cv487].

[4] *See* list on pp. 6-8 of Defendants' Objection to Plaintiff's Renewed Motion for Attorneys' Fees [Doc. No. 422 in 3:06cv487].

[5] *See* list on pp. 12-13 of Defendants' Objection to Plaintiff's Renewed Motion for Attorneys' Fees [Doc. No. 422 in 3:06cv487].

- The law of the case doctrine bars recovery for fees that were incurred before the court's entry of final judgment, but weren't included in Lock Realty's original fee petition in 2011.[6]

- Fees and costs related to Lock Realty's collection efforts are time barred under Fed. R. Civ. P. 54(d)(2)(B)(I) and 59(e) and should be denied in their entirety.

- Alternatively, any award of fees and costs related to collection efforts should be limited to the garnishment and supplemental proceedings initiated in this court before June 5, 2013, when the judgment was satisfied from the proceeds of Americare's bond.[7]

A. *Admissibility of the Billing Statements*

When the court denied Lock Realty's first fee request in April, it directed that any subsequent submission should not include (1) block billing, (2) duplicative entries, (3) time spent on Lock Realty's own appeal, or (4) time spent on collection efforts after the judgments were satisfied. [Doc. No. 417]. Lock Realty's renewed motion contains all of these. It includes redacted versions of the original block billing entries, the same vague narrative descriptions of work

---

[6] *See* Exhibit C to Defendants' Objection to Plaintiff's Renewed Motion for Attorneys' Fees [Doc. No. 422-3 in 3:06cv487].

[7] *See* list on pp. 20-22 of Defendants' Objection to Plaintiff's Renewed Motion for Attorneys' Fees [Doc. No. 422 in 3:06cv487].

performed, compensatory and non-compensatory tasks, and an unreasonable duplication of services, given the issues presented and the asserted expertise of the individuals involved.

The burden was on Lock Realty to provide objective evidence that the hours expended by each attorney and paralegal were reasonable and necessary to this litigation. *See* Loparex, LLC v. MPI Release Technologies, LLC, 2011 WL 2066666 at *3 (S.D. Ind. May 25, 2011); Stewart v. TT Commercial One, LLC, 911 N.E.2d at 59; Posey v. Lafayette Bank & Trust Co., 583 N.E.2d at 152. Although it has been afforded ample opportunity to do so, Lock hasn't met that burden. That Lock Realty might have paid the invoices submitted by Barnes & Thornburg for fees incurred through June 30, 2013 (*see* Maher Affidavit at ¶ 25) isn't controlling as to the reasonableness of those fees for fee-shifting purposes. Leibowitz v. Moore, 436 N.E.2d 899, 900 (Ind. App. 1982); U.S. Aircraft Financing, Inc. v. Jankovich, 407 N.E.2d 287 (Ind. App. 1980). The fees might well be reasonable, but the documentation doesn't allow the court to find them to be so.

Americare contends that Mr. Maher's "after the fact" assignments of specific times to specific tasks weren't made at or near the time the services were actually rendered and recorded and so are unreliable and inadmissible under Fed. R. Evid. 802 and 803(6)(A). Lock Realty didn't respond to that argument or dispute Americare's assertion that the revised time entries contained in Exhibits 1 and 2 were made by Mr. Maher several years after the services were rendered and

recorded. It simply contends that the real issue before the court is whether the fees incurred were reasonable, and summarily concludes that they were.

Neither Mr. Adey nor any of the other attorneys besides Mr. Maher have submitted statements that Mr. Maher's reconstruction of their time is accurate. Mr. Adey attests that he provided assistance to Mr. Maher and Ms. Springer regarding general case management issues, gave appellate guidance, and worked on collecting the judgment after it was entered in July 2010 (Adey Affidavit at ¶¶ 6 and 18), and enlisted the help of several other Barnes & Thornburg LLP professionals with specialized experience in the asset recovery and collection practice area and lower rates "[i]n order to work as efficiently as possible," including Sarah Quinn Kuhny, Annette Hass England, and Judy Shroyer, and two paralegals, Sandra Allison and Kyra Wagoner. (Adey Affidavit at ¶ 9). Mr. Adey also expressed the opinion that: "All of the work that was performed related to the collection efforts was ... reasonable given the nature of the case, and the uncertainty regarding the collectability of the judgment given the facts in this case" (as shown by the defendants' failure to submit a bond until after the state court proceedings and proceedings supplemental were initiated, and failure to immediately agree to release the bond to satisfy the judgment). (Adey Affidavit at ¶¶ 16 and 17). But his affidavit doesn't refer to Exhibits 1 and 2 or assert that he examined the billing records on which they were based, helped Mr. Maher prepare

and revise the summaries of work performed, rates billed, and hours expended, or reviewed the modified entries and determined that they were accurate.

A sister court in this circuit confronted a similar situation in <u>Loparex, LLC v. MPI Release Technologies, LLC</u>, 2011 WL 2066666 at *3 (S.D. Ind. May 25, 2011). The attorneys seeking a fee award were confronted with the task of stripping their block billings of time spent on non-compensable matters. Lacking useful contemporaneous task-specific records, the attorneys said they had done their best, based on their memories. But of the two attorneys, only one (Mr. Tyler) attested that the estimates of the necessary reductions were made in good faith and reasonably, the other attorney (Mr. Staser) submitted no such affidavit. The judge concluded that she could accept Mr. Tyler's estimates, but had no evidentiary basis on which to find that Mr. Staser thought the estimates were accurate.

So, too, here. While the court can accept Mr. Maher's revised estimates of the time *he* expended, he can't testify as to whether Mr. Adey or any of the other attorneys and paralegals listed in Exhibits 1 and 2 think the revisions to their time entries were accurate. The court has no evidentiary basis to evaluate the reasonableness of the hours expended by anyone other than Mr. Maher, and sustains Americare's objection to the remaining entries in Exhibits 1 and 2.

9

B. *Reasonableness of Hours Expended on Appeal*

Mr. Maher stated in his affidavit that he eliminated or "reduced" the time expended on work that was performed solely in relation to Lock's own appeal, but contends that there were instances in which the time expended applied to both appeals and was "inseparable." The court's prior order made clear that Lock Realty wasn't entitled to *any* fees related to its own appeal — which would exclude "reduced" fees and fees which Lock deems "inseparable". The continued use of block billing and the vague narrative descriptions contained in Exhibits 1 and 2 make it difficult, if not impossible, to tell whether many of the entries related to Lock Realty's appeal, Americare's cross-appeal, or both, and whether the time expended was "eliminated or reduced." The court isn't required to undertake a line by line comparison of the billing statements submitted and rejected in April with those submitted in support of Lock Realty's renewed motion, or to engage in an *in camera* review of the original billing records to determine the nature of the services performed and the reasonableness of the amounts billed. Americare's objections to the inclusion of time that may or may not be related in whole or in part to Lock Realty's appeal is accordingly sustained.

The court could deny Lock Realty's fee request in its entirety for the reasons stated. But in an effort to provide fair compensation for work that was reasonable and necessary on appeal, the court will reduce the time expended on matters that appear to relate to Lock's appeal or to both the appeal and cross-appeal

10

(including, but not limited to, time spent on matters related to settlement, travel to/from Chicago, and oral arguments), and will award Lock Realty a total of $27,635.50 in reasonable appellate fees. A list of the hours allowed and amounts awarded follows:

**Exhibit 1**

| Date | Hours Allowed | Amount Awarded |
|---|---|---|
| 11/14/11 | .60 | $237.00 |
| 11/15/14 | 0 | 0 |
| 11/15/14 | .60 | $237.00 |
| 11/16/11 | .60 | $237.00 |
| 11/17/11 | .10 | $39.50 |
| 11/18/11 | .50 | $197.50 |
| 11/22/11 | 1.00 | $395.00 |
| 11/28/11 | .90 | $355.50 |
| 11/29/11 | 1.55 | $612.25 |
| 11/30/11 | .30 | $118.50 |
| 12/6/11 | .30 | $124.50 |
| 12/9/11 | .70 | $290.50 |
| 12/30/11 | .65 | $269.75 |
| 1/3/12 | 2.65 | $1099.75 |
| 1/4/12 | 5.15 | $2137.25 |
| 1/24/12 | .30 | $124.50 |
| 1/25/12 | .55 | $228.25 |
| 1/30/12 | .90 | $373.50 |
| 2/9/12 | .40 | $166.00 |

| | | |
|---|---|---|
| 2/14/12 | .20 | $83.00 |
| 2/20/12 | .30 | $124.50 |
| 2/21/12 | .30 | $124.50 |
| 2/27/12 | .20 | $87.00 |
| 2/27/12 | .40 | $166.00 |
| 3/21/12 | 0 | 0 |
| 3/26/12 | .60 | $249.00 |
| 3/27/12 | .60 | $249.00 |
| 3/27/12 | 1.20 | $498.00 |
| 3/29/12 | 2.20 | $913.00 |
| 4/2/12 | 2.00 | $830.00 |
| 4/4/12 | .20 | $83.00 |
| 4/5/12 | .20 | $83.00 |
| 4/17/12 | 1.05 | $435.75 |
| 4/22/12 | 2.15 | $892.25 |
| 4/24/12 | 1.70 | $705.50 |
| 4/25/12 | 3.20 | $1328.00 |
| 4/26/12 | .20 | $83.00 |
| 5/17/12 | .20 | $83.00 |
| 5/18/12 | .20 | $83.00 |
| 8/6/12 | .45 | $186.75 |
| 8/14/12 | .10 | $41.50 |
| 9/4/12 | .55 | $228.25 |
| 9/6/12 | .30 | $124.50 |
| 9/7/12 | 1.20 | $498.00 |
| 9/9/12 | 1.55 | $643.25 |

| Date | Hours | Amount |
|---|---|---|
| 9/10/12 | 2.05 | $850.75 |
| 9/11/12 | 1.95 | $809.25 |
| 9/11/12 | 1.10 | $456.50 |
| 9/12/12 | 1.30 | $539.50 |
| 9/13/12 | 2.45 | $1016.75 |
| 9/14/12 | 3.05 | $1265.75 |
| 9/15/12 | 1.60 | $664.00 |
| 9/16/12 | 7.65 | $3174.75 |
| 9/17/12 | 3.95 | $1639.25 |
| 9/27/12 | .10 | $41.50 |
| 2/12/13 | .30 | $130.50 |
| 2/26/13 | 1.10 | $478.50 |
| 3/18/13 | .30 | $130.50 |
| 3/25/13 | 1.40 | $609.00 |
| **TOTALS** | **66.70** | **$27,635.50** |

C. *Post-Judgment and Collection Fees and Costs*

For the reasons already stated, the court lacks an evidentiary basis to evaluate the reasonableness of the hours expended on post-judgment collection efforts by anyone other than Mr. Maher. Whether Mr. Maher is entitled to fees for his efforts to enforce and collect the judgments is subject to dispute.

Americare contends that Lock Realty's supplemental fee request is untimely under Fed. R. Civ. P. 54(d)(2)(B)(I) and 59(e) and should be denied in its entirety or, alternatively, should be limited to the garnishment and proceedings supplemental initiated before June 5, 2013, when the judgment in *Lock II* was

13

satisfied from the proceeds of Americare's bond. In response, Lock Realty summarily concludes that it's motion was timely, that the court has supplemental jurisdiction and that it considered and rejected Americare's objections in its order of April 2, 2014 and effectively amended Rule 54's filing deadline when it "set[] forth the schedule by which Lock was to submit its petitions for costs and fees" in its earlier orders (presumably referring to the orders of July 18, 2013 and April 2, 2014 [Doc. Nos. 398 and 417]). A review of those orders demonstrates otherwise.

The original scheduling order entered in July 2013 was limited to Lock Realty's request for fees on appeal [Doc. No. 398]. Lock neither requested nor received leave to file a belated motion for fees related to its collection efforts, but seized the opportunity on remand to reopen the issue of attorneys fees and submit a new claim. Americare raised six objections to Lock Realty's first motion for collection-related fees, including the motion's timing, but the court addressed only three in its April 2 order, holding that: (1) awarding fees for collection wouldn't exceed the scope of the remand order; (2) Lock Realty's use of block billing containing compensable and non-compensable tasks made it impossible to determine a reasonable fee award; and (3) any time expended after the judgments were satisfied on June 5, 2013 was non-compensable. [Doc. No. 417 at pp. 5-9].

A court has supplemental jurisdiction to hear a motion for attorneys' fees, *see* Baer v. First Options of Chicago, Inc., 72 F.3d 1294, 1298-1301 (7th Cir. 1995), but the exercise of that jurisdiction is discretionary, not mandatory. Lock

14

Realty doesn't dispute the fact that its motion wasn't filed within the time provided under Fed. R. Civ. P. 54(d)(2)(B)(I) or Rule 59(e), and hasn't shown grounds for relief under Fed. R. Civ. P. 60 or good cause for failing to file its motion in a timely manner. The $140,870.18 it seeks in supplemental fees and costs is neither reasonable nor necessary given the unsubstantiated assertion that the judgments appeared to be uncollectable (the record clearly demonstrates otherwise), the lack of objective evidence supporting the reasonableness of the fees requested by anyone other than Mr. Maher, the continued use of block billing which made it impossible to discern whether the tasks performed were compensable or noncompensable, and the fact that the costs incurred appear to relate solely to collection efforts outside this court. Accordingly, to the extent Lock Realty seeks to recover additional fees and costs related to its post-judgment endeavors, its motion is denied.

III. CONCLUSION

In affirming the dismissal of *Lock III*, the court of appeals reiterated that its 2013 decision affirming *Lock I* and *Lock II* "*was* 'the end' for this dispute, and Lock Realty should have left well enough alone." Lock Realty Corp. IX v. Americare Living Centers LLP, 557 Fed.Appx. 592 (7th Cir. 2014). This court agrees. For the foregoing reasons, Lock Realty's renewed motion for attorneys' fees and costs [Doc. No. 226 in 3:05-CV715][Doc. No. 418 in 3:06-CV-487] is GRANTED in part, and

Lock Realty is awarded $27,635.50 in appellate fees. In all other respects, the motion is DENIED.

SO ORDERED.

ENTERED:   March 26, 2015

/s/ Robert L. Miller, Jr.
Judge
United States District Court